**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on February 17, 2011, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: February 17, 2011**

**Arthur I. Harris
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: ) | Case No. 10-11931 | |
| FRANK HARMON LORD, ) | | |
|    Debtor. ) | Chapter 7 | |
| _____ ) | | |
| ) | | |
| DAVID DeROMA and ) | Adversary Proceeding | |
| LAURIE DeROMA, ) | No. 10-1172 | |
|    Plaintiffs, ) | | |
| ) | Judge Arthur I. Harris | |
| v. ) | | |
| ) | | |
| FRANK HARMON LORD, ) | | |
|    Defendant. ) | | |

MEMORANDUM OF OPINION[1]

Before the Court is the plaintiffs' motion for summary judgment and the defendant-debtor's response. At issue is whether the debt owed to plaintiffs David and Laurie DeRoma is nondischargeable under 11 U.S.C. § 523(a)(2). For the reasons that follow, the plaintiffs' motion for summary judgment is granted. The debt owed to plaintiffs in the amount of $84,422.16, as outlined in the arbitration

---

[1] This opinion is not intended for official publication.

award and confirmed by the Cuyahoga County Court of Common Pleas, is nondischargeable.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2010, the debtor, Frank Harmon Lord (hereinafter "defendant"), filed a petition under Chapter 7 of the Bankruptcy Code. On May 25, 2010, David and Laurie DeRoma (hereinafter "plaintiffs") filed this adversary complaint to determine the dischargeability of a portion of a debt owed them as a result of defendant's breach of a construction contract, fraud, and a violation of the Ohio Consumer Sales Practices Act ("OCSPA"). The dispute arose from a contractual agreement in which the defendant agreed to make substantial renovations to plaintiffs' home. Although the parties attempted to resolve several issues pertaining to the performance of the contract, ultimately, the plaintiffs resorted to the alternative dispute resolution provisions of the construction contract. It appears that extensive factfinding and related testimony

took place during an 18-day arbitration hearing. The arbitrator found in favor of the plaintiffs and awarded an interim amount of $308,474.89. The total award was broken down as follows:

| | |
|---|---|
| Base Contract | $335,723.00 |
| Extras | $19,730.00 |
| Allowances | $26,440.17 |
| Adjusted contract total | $239,012.83 |
| Amount Paid | $463,659.69 |
| Overpayment | $134,646.86 |
| Costs to complete | $103,083.87 |
| CSPA damages | $70,744.16 |

Of particular importance is the allocation for "CSPA damages." In his interim award, the arbitrator wrote:

> Deromas argued that the actions of Lord constitute fraud. Fraud is a misrepresentation of current fact made with the intent that the party will rely on this representation, followed by actual reliance and damages resulting from that reliance. While the actions of Lord certainly are not commendable, they did not rise to the level of fraud. In one respect, however Lord's actions were both fraudulent and a violation of the Ohio Consumer Sales Protection Act.

(Interim Award (Docket # 17-1) at p. 5).

The action the arbitrator found to be fraudulent was the defendant leading the plaintiffs to believe that the defendant would be able to obtain a specific price

3

advantage on the plaintiffs' behalf. In fact, a comparison to market price indicated that no price advantage was given. Instead of a price advantage, the defendant charged a 15% additional markup. This, the arbitrator found, was both fraud and a violation of Ohio Revised Code § 1345.02(B)(8) warranting treble damages and attorney's fees. Ultimately, on August 13, 2009, the arbitrator awarded the plaintiffs $70,744.16 as a result of the OCSPA violation and $9,515 in attorney's fees for prosecuting the OCSPA violation, totaling $84,422.16. It is this portion of the arbitration award and resulting state court judgment for which the plaintiffs seek a determination of nondischargeability.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c),[2] as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[2] Rule 56 of the Federal Rules of Civil Procedure underwent significant revisions effective December 1, 2010. Although the standard for granting summary judgment remains unchanged, the revised Rule 56 adopts many new procedures for presenting and responding to summary judgment motions. *See* Advisory Committee Note to 2010 amendments. The revised rule applies to all proceedings commenced on or after December 1, 2010, and, insofar as just and practicable, to all proceedings then pending. Since the summary judgment briefing in this case was completed before the effective date of the revisions to Rule 56, the Court will apply the version of Rule 56 in effect before December 1, 2010.

4

moving party is entitled to judgment as a matter of law.

The moving party bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). The Court shall view all evidence in a light most favorable to the nonmoving party when determining the existence or nonexistence of a material fact. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

## DISCUSSION

As the Sixth Circuit has stated, "the full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court."

*Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir. 1999). When determining whether a state court judgment precludes relitigation of an issue, federal courts apply the law of the state in which the judgment was rendered. *See In re Fordu*, 201 F.3d at 703.

Under Ohio law "issue preclusion 'precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action.' " *Metrohealth Med. Ctr. v. Hoffman-Laroche, Inc.*, 80 Ohio St. 3d 212, 217, 685 N.E.2d 529, 533 (1997) (quoting *Krahn v. Kinney*, 43 Ohio St. 3d 103, 107, 538 N.E.2d 1058,1062 (1989). The Ohio Supreme Court has held that issue preclusion applies

> when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

*State ex rel. Davis v. Pub. Employees Ret. Bd.*, 120 Ohio St. 3d 386, 392, 889 N.E.2d 975, 982 (2008) (*quoting Thompson v. Wing*, 70 Ohio St. 3d 176, 183, 637 N.E.2d 917, 923 (1994)).

The resolution of this matter hinges on elements (1) and (2). First, the Court must determine whether the arbitration procedures and subsequent confirmation of the arbitration award by the state court qualify as a determination by a court of

6

competent jurisdiction. Second, the Court must determine whether the issue in dispute, the fraudulent nature of the defendant's action, was actually and directly litigated in the arbitration proceeding. Finally, the Court must determine whether the debt is nondischargeable.

*1. Determination by a court of competent jurisdiction*

When deciding a case under state law, a federal court must apply the law of the state's highest court. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). If the state's highest court has not decided the issue in question, such as the issue preclusive effect of an arbitration award confirmed by the state court, the federal court must predict how the state supreme court would rule using "all relevant data." *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d at 1130 (*quoting Bailey v. V&O Press Co.*, 770 F.2d 601, 706 (6th Cir. 1985)). Relevant data include: state appellate decisions, state supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states. *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d at 1130; *Baumgart v. Alam* (*In re Alam*), 359 B.R. 142, 147 (6th Cir. BAP 2006).

While it appears Ohio courts take a more liberal approach than federal courts when considering the preclusive effect of arbitration awards, the results are similar;

arbitration awards have the same preclusive effect as state court judgments for the matters they decide. *Wilson v. Voss Chevrolet, Inc.,* No. 18925, 2002 WL 1396145 (Ct. App. Ohio 2002) (implicit submission to and decision by the arbitrators on all issues properly before them, including attorney's fees, barred separate petition for attorney's fees); *Ford Hull-Mar Nursing Home, Inc., v. Marr, Knapp, Crafis & Associates, Inc.,* 740 N.E.2d 729 (Ct. App. Ohio 2000) (arbitrator's consideration of counterclaims, even without written findings of fact and conclusions of law, precludes pursuit of those counterclaims on appeal); *City of Cleveland v. Association of Cleveland Fire Fighters, Local 93*, 485 N.E.2d 792 (Ct. App. Ohio 1984) (while an arbitration award has preclusive effect, it does not preclude subsequent litigation for issues which may have been decided but were not).

While arbitration awards are generally entitled to claim preclusive effect, *see Mactec, Inc. v. Gorelick*, 427 F.3d 821 (10th Cir. 2005), *Gunther v. Gunther (In re Gunther),* No. 08-8108, 2009 WL 3104033, (6th Cir. BAP 2009), whether an arbitration award is entitled to issue preclusive effect depends upon the nature of the arbitration proceeding and the specific terms of the arbitration agreement.

In *Khaligh v. Hadeagh (In re Khaligh)*, 338 B.R. 817 (9th Cir. BAP 2006), the Ninth Circuit BAP reviewed whether an arbitration award that was confirmed by a state court in California should be entitled to issue preclusive effect. In

writing for the Ninth Circuit BAP, Judge Klein noted that the *Restatement (Second) of Judgments* generally affords preclusive effect to arbitration awards if the underlying proceeding was "adjudicatory in nature." *In re Khaligh*, 338 B.R. at 828-29.

Section 84 of the Restatement Second of Judgments provides in pertinent part:

> (1) Except as stated in Subsections (2), (3), and (4), a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.
>
> (2) An award by arbitration with respect to a claim does not preclude relitigation of the same or a related claim based on the same transaction if a scheme of remedies permits assertion of the second claim notwithstanding the award regarding the first claim.
>
> (3) A determination of an issue in arbitration does not preclude relitigation of that issue if:
>
>> (a) According preclusive effect to determination of the issue would be incompatible with a legal policy or contractual provision that the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question, or with a purpose of the arbitration agreement that the arbitration be specially expeditious; or
>>
>> (b) The procedure leading to the award lacked the elements of adjudicatory procedure prescribed in § 83(2)
>
> (4) If the terms of an agreement to arbitrate limit the binding effect of

9

the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.

The factors to be considered in the determination of whether the essential elements of adjudication have been met are whether:

a) Adequate notice to persons who are to be bound by the adjudication, as stated in § 2;

b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or specified series thereof;

d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

*Restatement (Second) of Judgments* § 83(2).

After due consideration of these factors, the Ninth Circuit BAP held that the bankruptcy court was correct in granting summary judgment against the debtor based on the issue preclusive effect of the arbitration award. The Ninth Circuit BAP noted that the arbitration award met the adjudicatory standards outlined in the

10

*Restatement* because both parties had adequate notice and were represented by counsel, the arbitration process lasted 18 months and included extensive discovery, and the 17-day arbitration hearing included the presentation of evidence, rebuttal, and argument. *In re Khaligh*, 338 B.R. at 830. Other states have applied the *Restatement* to similar facts. *Compare Riverdale Dev. Co. v. Ruffin Building Systems, Inc.,* 146 S.W.3d 852 (Ark. 2003) (party is collaterally estopped from litigating the same issue if it had a full and fair opportunity to litigate an issue that was actually decided by an arbitrator and necessary to the decision) *with Panniel v. Diaz*, 871 A.2d 156 (N.J. Super. Ct. 2005) (collateral estoppel does not apply when defendants did not have a full and fair opportunity to be heard at arbitration).

Having considered the general rule of Ohio courts, the *Restatement*, and various cases applying the *Restatement*, this Court finds that, where the arbitration is generally adjudicative in nature, arbitration awards are entitled to issue preclusive effect for the matters that were actually and necessarily decided by the arbitrator. In this case, the arbitration hearing lasted 18 days, for which both parties were given notice. Both parties were afforded the opportunity for representation by counsel and were given the opportunity to present testimony and other evidence. As demonstrated by the interim and final arbitration award, the arbitrator engaged in substantial factfinding and legal analysis, and did not simply

11

award a blanket judgment. Thus, the arbitration and subsequent awards were adjudicative in nature; however, this does not end the inquiry.

The *Restatement* affords equal weight to the contractual language of the arbitration agreement itself. *See Restatement of Judgments* § 84(4) (noting that terms of arbitration agreement may limit binding effect of the award in other adjudications). The arbitration agreement at issue in this proceeding provides in pertinent part "[t]he award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." (Docket #21). The absence of language that would limit the binding effect of the arbitrator's award evidences a general understanding between the parties that the arbitration award would be final and binding as though decided by the state court.

### 2. Actually and directly litigated in the prior action

Having established that this arbitration award, confirmed by the state court, constitutes a determination by a court of competent jurisdiction, the Court must next determine whether the issue of fraud was actually and necessarily decided by the arbitrator. In the underlying arbitration, the arbitrator used the common law principles of fraud and defined the cause of action as "a misrepresentation of current fact made with the intent that the party will rely on this representation,

12

followed by actual reliance and damages resulting from that reliance." (Interim Award (Docket # 17-1) at p. 5). Although the final award only discusses the OCSPA violation, the arbitrator specifically found in the interim award that "[i]n one respect . . . Lord's actions were both fraudulent and a violation of the Ohio Consumer Sales Protection Act." (Interim Award (Docket # 17-1) at p. 5).

> Under Ohio law, the elements of an action in fraud are:
>
> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

Gaines v. Preterm-Cleveland, Inc., 514 N.E.2d 709, 712 (Ohio 1987); *see also Andersons, Inc. v. Consol, Inc.,* 185 F. Supp.2d 833, 843 (N.D. Ohio 2001) (*quoting Burr v. Bd. of County Commrs. of Stark County*, 491 N.E.2d 1101, 1102-03 (Ohio 1986)).

In this case, the arbitrator found that the plaintiffs had proven the elements of common law fraud with regard to the conduct involving the misrepresentation of a price advantage. Additionally, the determination was necessary because fraud/misrepresentation was pled along with the OCSPA violation and it was properly before the arbitrator for decision. Thus, the defendant is collaterally

13

estopped from relitigating the issue of Ohio common law fraud.

The defendant argues that while the arbitrator found the defendant violated the OCSPA, the arbitrator did not discuss the extent of the plaintiffs' reliance, proximate cause, or the defendant's intent upon making the statement. The defendant's argument that the OCSPA claim and the § 523 claim are not "identical" overlooks the arbitrator's finding of common law fraud, a cause of action that has been found to be "identical" to section § 523(a)(2)(A) fraud. *See Schory v. Francis* (*In re Francis*), 226 B.R. 385, 389 (BAP 6th Cir. 1998).

The Court need not analyze the extent to which the elements of the OCSPA claim are dissimilar from the elements of nondischargeability under § 523(a)(2)(A) because the arbitrator awarded the damages arising from the OCSPA claim as a result of the same conduct he found fraudulent under Ohio law.[3]  In other words,

---

[3] Ohio Revised Code section 1345.02 provides in pertinent part:

(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
> . . . .
> (8) That a specific price advantage exists, if it does not . . . .

the arbitrator found that the defendant's misrepresentation regarding price advantages was both common law fraud and a violation of the OCSPA. While the result might have been different if the plaintiffs' fraud claim and OCSPA claim involved separate conduct – *e.g.,* misrepresenting a price advantage in one instance versus misrepresenting that a repair was needed when it was not in another instance – here the same misrepresentation regarding price advantage was both common law fraud and a violation of the OCSPA. *Cf. In re Brown*, 215 B.R. 844 (Bankr. E.D. Ky. 1998) (Ohio Consumer Sales Practices Act does not require demonstration of reasonable reliance or proximate cause and cannot alone establish nondischargeability under section 523(a)(2)(A)).

The defendant asserts that the arbitrator only decided the issue of the OCSPA violation; however; this argument is not well taken. After hearing the evidence submitted by both the plaintiffs and defendant, the arbitrator made a specific finding that the defendant's "actions were *both* fraudulent and a violation of the Ohio Consumer Sales Protection Act."(Interim Award (Docket # 17-1) at p. 5) (emphasis added). *See Longbrake v. Rebarchek (In re Rebarchek)*, 293 B.R. 400 (N.D. Ohio Bankr. 2002) (any dissimilarities between elements for violation of OCSPA and elements for nondischargeability under section 523(a)(2)(A) can be cured by additional findings by the state court). That the arbitrator only outlined

15

the damages for the OCSPA violation in the final award does not negate the issue preclusive effect of the arbitrator's additional specific finding that the defendant also engaged in fraud. *See In re Rebarchek,* 293 B.R. at 408. Even construing the application of preclusion in a light most favorable to the defendant, the Court finds that the issues of common law fraud and OCSPA were actually and directly litigated by the arbitrator.

*3. Nondischargeability pursuant to § 523(a)(2)(A)*

Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by-
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the

16

creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See Rembert v. AT&T Universal Card Services (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998).

"[T]he elements of a dischargeability claim under 11 U.S.C. section 523(a)(2)(A) are virtually identical to the elements of a fraud claim in Ohio." *In re Francis*, 226 B.R. at 389. Thus, because the plaintiffs have established the elements of a fraud claim under Ohio law, their claim against the defendant for fraud is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Here, the damages awarded arise from the same conduct, and thus the entire judgment attributable to the OCSPA violation is nondischargeable. *See Cohen v. De La Cruz*, 523 U.S. 213 (1998) (entire state court judgment including costs, attorney's fees, and punitive damages is nondischargeable). Accordingly, the plaintiffs' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for summary judgment is granted. The debt owed to plaintiffs attributable to the fraudulent actions of the defendant-debtor, in the amount of $84,422.16, as outlined in the arbitration award and confirmed by the state court, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

IT IS SO ORDERED.